**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STACY BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-26-77-PRW |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY and MAI McCOY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>ORDER</u>**

Before the Court is Plaintiff's Motion to Remand (Dkt. 9). This Motion (Dkt. 9) is fully briefed and ripe for review. For the reasons that follow, the Court **GRANTS** the Motion (Dkt. 9).

### *Background*

This case arises from an insurance dispute following hail and windstorm damage to Plaintiff's home. Plaintiff purchased a State Farm homeowners' replacement cost insurance policy through State Farm's captive agent, Mai McCoy. Following a hailstorm in April 2023, Plaintiff submitted an insurance claim to State Farm, who inspected Plaintiff's roof on March 1, 2024, and later offered her $300.00 to replace between six and ten shingles, a section of guttering, and roof hardware. Plaintiff alleges that State Farm originally agreed to cover repairs to Plaintiff's ceiling, wall, and backdoor caused by water intrusion. State Farm closed the claim on March 7, 2025, without reimbursing Plaintiff's repair costs.

1

Plaintiff believes that State Farm is engaged in a common scheme to deny or underpay Oklahoma insureds for wind and hailstorm damage. McCoy allegedly assisted with this practice by selling insurance coverage to Plaintiff without disclosing State Farm's bad faith tactics. Accordingly, on December 12, 2025, Plaintiff brought this case against Defendants in Oklahoma County District Court. Plaintiff accuses State Farm of (1) breach of contract, (2) breach of the duty of good faith and fair dealing, and (3) constructive fraud and negligent misrepresentation. Plaintiff accuses McCoy of (1) negligent procurement of insurance and (2) constructive fraud and negligent misrepresentation.

On January 16, 2026, State Farm removed this case to this court, arguing that Plaintiff fraudulently joined McCoy—the sole non-diverse defendant. Plaintiff subsequently moved to remand this case back to Oklahoma County District Court.

### Legal Standard

Diversity jurisdiction requires a party to "show that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000."[1] Under the doctrine of fraudulent joinder, however, courts are to ignore a non-diverse defendant's citizenship if the defendant invoking the court's jurisdiction carries the "heavy burden" of showing either "(1) actual fraud in the pleading of jurisdictional facts," or, as is more common, "(2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[2]

---

[1] *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) (citation omitted).

[2] *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)).

"Where, as here, removal is based on the second prong, the removing party must demonstrate the non-liability of the defendant[s] alleged to be fraudulently joined with complete certainty."[3] Remand is required if any claim against a nondiverse defendant "is possibly viable."[4] The standard for showing fraudulent joinder is stringent because of (1) the presumption in favor of a plaintiff's right to select their forum and join tortfeasors,[5] (2) the presumption against the exercise of removal jurisdiction due to federalism concerns,[6] and (3) the risk of a post-merits reversal for lack of jurisdiction. Accordingly, a challenged

---

[3] *Ford v. Liberty Mut. Ins. Co.*, No. CIV-19-925-G, 2020 WL 259554, at *2 (W.D. Okla. Jan. 16, 2020) (cleaned up and citation omitted); *see also Smoot v. Chi., R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967).

[4] *Montano v. State Farm Indem.*, 211 F.3d 1278, at *2 (10th Cir. 2000). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

[5] *See Grancare, LLC v. Thrower by & through Mills*, 889 F.3d at 549–50 (9th Cir. 2018) ("The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we strictly construe the removal statute, and reject federal jurisdiction if there is any doubt as to the right of removal in the first instance." (internal quotation marks and citation omitted)); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (This strict approach to fraudulent joinder "makes sense given the law that absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." (internal citation and quotation marks omitted)).

[6] Removal jurisdiction must be "construe[d] . . . strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (internal citation and quotation marks omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (citations and internal quotation marks omitted)).

3

joinder may be considered non-fraudulent even when the predicate claim might not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[7]

When considering whether an exercise of diversity jurisdiction pursuant to the fraudulent joinder doctrine is appropriate, courts resolves "all factual and legal issues . . . in favor of the plaintiff."[8] And courts may "look beyond the pleadings" and consider the entire record.[9] That the Court may pierce the pleadings, however, "does not mean that the federal court will pre-try . . . doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."[10]

### *Discussion*

The Court finds that State Farm has failed to meet its heavy burden to show that there is no possibility of recovery against McCoy on Plaintiff's negligent procurement and constructive fraud claims. Here, State Farm must show "[the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[11] Thus, Plaintiff need only establish at least one *possibly* viable claim against Defendant McCoy.

---

[7] *See Montano*, 211 F.3d at *2 ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." (citation omitted)); *see also Grancare*, 889 F.3d at 549 ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined.").

[8] *Dutcher*, 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

[9] *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (internal quotation marks omitted) (citing *Smoot*, 378 F.2d at 881–82).

[10] *Smoot*, 378 F.2d at 882 (internal quotation marks and citation omitted).

[11] Dutcher, 733 F.3d at 988.

Plaintiff asserts that State Farm is engaged in a widespread scheme to systematically deny or underpay Oklahoma insureds for wind and hailstorm damage.[12] Crucially, the alleged scheme begins when State Farm's captive agents expressly or impliedly represent to the insureds that their properties meet State Farm's underwriting guidelines in their present condition at the time insured purchase or renew their policies.[13] Plaintiff asserts that McCoy was aware of the scheme and failed to disclose it when she sold and renewed coverage on Plaintiff's property.[14] Plaintiff alleges that Defendant McCoy was aware that Plaintiff needed a policy from the agent that would fully replace her damaged property without exclusion of weather-related losses after making express or inherent disclosures about her concerns.[15] Plaintiff argues that by procuring and binding the coverage without limitation, the agent "independently established, calculated, and set the Policy's replacement cost value and resultant policy coverage limits."[16] This, per Plaintiff, meant the captive agent "inherently conveyed that such coverage limit was accurate, correct, commensurate with actual replacement costs, and represented 100% of the Insured Property's insurance to value."[17] Plaintiff claims she was never made aware of State Farm's

---

[12] First Amend. Compl. (Dkt. 5), at 1.

[13] *Id.* at 2.

[14] *Id.* at 25.

[15] *Id.* at 9.

[16] *Id.* at 9–10.

[17] *Id.* at 10.

internal definitions of "hail damage," "wear and tear," and other related terms.[18] Plaintiff ultimately alleges that she was undercompensated for hail-caused damage to her property.

Based on these allegations, Plaintiff has alleged claims against Defendant McCoy for negligent procurement and constructive fraud and negligent misrepresentation. Plaintiff detail instances of the agent's negligence in the First Amended Complaint (Dkt. 5), including by failing to confirm that her property met State Farm's underwriting guidelines, knowingly procuring and renewing coverage that was materially different from that which Plaintiff requested and did not accurately reflect the replacement cost value of the property, misrepresenting that the property was in good condition, misrepresenting that the policy would cover storm-related losses, and failing to disclose the alleged scheme to shortchange insureds.

State Farm argues that Plaintiff cannot make out claims for negligent procurement[19] or negligent misrepresentation and constructive fraud[20] against the agent. State Farm attempts to cast doubt on the ability of Plaintiff to show causation or damage in her claims by asserting the policy Plaintiff purchased provided the level of coverage she originally

---

[18] *Id.* at 11.

[19] Under Oklahoma law, "an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." *Swickey v. Silvey Cos.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999).

[20] Under Oklahoma law, constructive fraud consists of "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him." Okla. Stat. tit. 15, § 59.

sought, she did in fact have full coverage to replace qualifying property damage, and State Farm simply denied her claim.

To cast doubt, however, is not to render a case fit for "summary determination" or to prove it "with complete certainty."[21] In this posture, the Court may not pre-try the underlying issues. Rather, all factual and legal questions must be resolved in favor of Plaintiff. Here, open questions remain regarding the scope of the agent's role in procurement of the policy, whether Plaintiff requested or was promised more extensive coverage than she received, the precise duties that may be imposed on insurance agents under Oklahoma law, the representations made by the agent, the existence and the agent's knowledge of a widespread scheme to shortchange insured parties when making claims for hail and wind damage, and more. Upon review of the record, the Court cannot say that Plaintiff's claims against McCoy have "no possibility" of succeeding. Further, this Court has already found remand appropriate in cases remarkably similar to this one.[22]

### *Conclusion*

For the reasons given above, the Court concludes that State Farm has not met the high burden required to demonstrate fraudulent joinder. Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand (Dkt. 9) and **DENIES AS MOOT** Defendant's Motion to

---

[21] *Smoot*, 378 F.2d at 882 (quoting *Dodd*, 329 F.2d at 85).

[22] *See, e.g., Maher v. State Farm Fire and Casualty Co.*, Case No. CIV-25-81-PRW, 2025 WL 1909507 (W.D. Okla. July 10, 2025).

Dismiss (Dkt. 6). The Court **DIRECTS** the Clerk to remand this action to the District Court

of Oklahoma County.

      **IT IS SO ORDERED** this 5th day of May 2026.

 

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE